# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DANIEL J. DIPERNA,**

        **Plaintiff,**

**v.**                                  **Case No:   6:12-cv-687-Orl-36KRS**

**GEICO GENERAL INSURANCE
COMPANY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motions filed

herein:

| MOTION: | PLAINTIFF DANIEL J. DIPERNA'S MOTION FOR AWARD OF ATTORNEY'S FEES, PARALEGAL FEES, AND INTEREST ON SAME WITH CERTIFICATE OF COMPLIANCE (Doc. No. 182) |
|---|---|
| FILED: | December 10, 2015 |

| MOTION: | GEICO GENERAL INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO . . . PLAINTIFF'S BILL OF COSTS AND THE BILL OF COSTS TAXED AGAINST GEICO (Doc. No. 184) |
|---|---|
| FILED: | December 11, 2015 |

| MOTION: | PLAINTIFF'S REPLY TO DEFENDANT GEICO GENERAL INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF COSTS AND PLAINTIFF'S RENEWED MOTION FOR AWARD OF COSTS (Doc. No. 187) |
|---|---|
| FILED: | December 23, 2015 |

## I.      BACKGROUND.

This case arises from a lawsuit filed in Florida state court (the "Underlying Action") concerning injuries suffered by Daniel J. Diperna when a motor vehicle driven by Joseph R. Umberger collided with a motor vehicle driven by Diperna, resulting in serious bodily injury to Diperna.   Doc. No. 2, at 2.   At the time of the collision, Umberger was insured by GEICO General Insurance Company ("GEICO").   *Id.*   On February 28, 2011, the state court Circuit Judge entered a Final Judgment by consent in favor of Diperna against Umberger in the amount of $625,000.00. Doc. No. 1-1.   Thereafter, Umberger assigned to Diperna his claim against GEICO for its bad faith failure to settle the Underlying Action.   Doc. No. 2, at 6.

On April 9, 2012, Diperna filed the present bad-faith claim in state court.   Doc. No. 2.   On May 4, 2012, GEICO timely removed the case to this Court pursuant to the Court's diversity jurisdiction.   Doc. No. 1.

Litigation in this case proceeded.   The docket reflects only one substantive discovery dispute.   Doc. Nos. 33, 35, 39.   Both sides filed motions for summary judgment in March 2013, which motions were denied.   Doc. Nos. 43, 45, 95.   They also filed a number of motions in limine, which were resolved before trial began.   Doc. Nos. 58, 59, 60, 61, 62, 63, 100.   The case proceeded to a five-day jury trial.   On April 4, 2014, the jury found that GEICO acted in bad faith in failing to settle Diperna's claim against its insured.   Doc. No. 134.   The Court subsequently entered an amended judgment in favor of Diperna in the amount of $732,060.83, Doc. No. 155, and GEICO appealed, Doc. Nos. 151, 158.   On April 18, 2014, Diperna filed motions for attorneys' fees and costs related to work performed at the trial level, *see* Doc. Nos. 142, 143, which I denied without prejudice, pending resolution of GEICO's appeal, *see* Doc. No. 152.   I also granted Diperna leave

to file renewed motions, if appropriate, within twenty days after the issuance of the mandate by the United States Court of Appeals for the Eleventh Circuit.   Doc. No. 152.

The Eleventh Circuit ultimately affirmed the amended judgment.   Doc. No. 170.   Diperna then filed renewed motions for attorneys' fees and costs.   Doc. Nos. 171, 175.   Diperna also filed his proposed bill of costs.   Doc. No. 176.   The Clerk taxed costs against GEICO on October 29, 2015.   Doc. No. 177.   On that same day, GEICO represented that the parties wished to schedule a mediation in an effort to resolve, *inter alia*, their dispute over the amount of attorneys' fees and costs to which Diperna was entitled.   Doc. No. 179, at 3.   In light of that representation, I denied the renewed motions, but again afforded Diperna leave to re-file motions, if mediation failed to resolve the parties' disputes.   Doc. No. 180.

Mediation ultimately proved unsuccessful, and on December 10, 2015, Diperna renewed his motion for attorneys' fees.   Doc. No. 182.   On December 28, 2015, GEICO filed its response in opposition to that motion.   Doc. No. 189.   Diperna subsequently submitted a reply brief with the Court's leave.   Doc. No. 196.

On December 10, 2015, Diperna also moved the Court to reduce the previously entered Bill of Costs to a judgment, which request I denied.   Doc. No. 183, 186.   GEICO submitted objections to the Bill of Costs, *see* Doc. No. 184, and Diperna submitted a response to those objections, Doc. No. 187.   Diperna's response also purports to be a renewed motion for an award of costs.   Doc. No. 187.

Diperna's objections to the Bill of Costs are presently before the Court.   The motions for attorneys' fees and costs related to work performed at the trial level in this Court have also been

referred to me by the presiding District Judge for issuance of a Report and Recommendation.[1] These matters are now ripe for review.

## II.    DISCUSSION.

Diperna originally sought an award of $858,388.50 in attorney and paralegal fees, and $21,005.60 in costs.[2]   Doc. Nos. 177, 182.   He also seeks prejudgment interest on the attorney and paralegal fee award, and post-judgment interest on the cost award.   Each of those requests will be addressed in turn.

### A.    *Attorneys' Fees Related to Work Performed at the Trial Level.*

Because this is a diversity case arising under Florida law, Florida law determines whether the Court should award Diperna attorneys' fees.   *See Pavarini Constr. Co. (SE) v. ACE Am. Ins. Co.*, No. 14-cv-20524-KING, 2015 U.S. Dist. LEXIS 151247, at *22 (S.D. Fla. Oct. 29, 2015). Section 627.428(1), Florida Statutes, authorizes a court to award attorneys' fees to an insured or named beneficiary when a judgment is entered in his favor under a policy or contract executed by an insurer, or following a successful appeal concerning the same.   Attorneys' fees may also be awarded to assignees of third-party bad faith claims under § 627.428.   *Allstate Ins. Co. v. Regar*, 942 So. 2d 969, 972–73 (Fla. 2d Dist. Ct. App. 2006).

Here, GEICO does not dispute that Diperna, as an assignee who prevailed at trial and on appeal, is entitled to an award of attorneys' fees under § 627.428.   *See* Doc. No. 182, at 6; Doc. No. 189.   Instead, the parties dispute the amount of fees that should be awarded under prevailing law.

---

[1]  A separate motion pertaining to work performed on Diperna's behalf at the appellate level has also been referred to me.   Doc. No. 197.   That motion will be addressed in a separate report and recommendation.

[2]  Diperna agreed to deduct some costs in filings submitted after the Clerk taxed costs.   Those deductions will be addressed in the sections that follow.

In determining a reasonable attorneys' fee award under § 627.428, courts employ the lodestar approach. *Travelers Home & Marine Ins. Co. v. Calhoun*, No. 5:13-cv-251-Oc-22PRL, 2014 U.S. Dist. LEXIS 45493, at *9 (M.D. Fla. Feb. 21, 2014), *adopted by* 2014 U.S. Dist. LEXIS 45494 (M.D. Fla. Apr. 1, 2014); *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1146 (Fla. 1985). Under that approach, a court must multiply the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services to reach a sum referred to as the "lodestar." *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (per curiam). The court may then adjust the lodestar, based on a variety of considerations. *Id.*; *see also Rowe*, 472 So. 2d at 1151.

Diperna requests $858,388.50 in attorneys' fees for work performed by the law firm of Bush Graziano Rice & Platter, P.A. ("BGRP") in the District Court, plus prejudgment interest. Doc. No. 182, at 4. Specifically, Diperna requests fees for the work of Ronald E. Bush, Esq., James J. Wimsatt, Esq., Brandon T. Kuhn, Esq., and Paralegal Anne Brooks. *Id.* Diperna reaches this total amount of attorneys' fees by utilizing attorney fee rates between $260.00 and $500.00 per hour and a paralegal fee rate of $100.00 per hour. *Id.* He seeks to recover for 1,084.40 hours of attorney work and 99.50 hours of paralegal work. *Id.* He also incorporates a contingency risk multiplier of 2.25 into his calculation. *Id.* For the reasons set forth below, I recommend that Diperna not be awarded the entire sum requested.

1.    Qualifications of the Fee Experts.

Diperna supports his request for attorneys' fees with the Affidavit and Supplemental Affidavit of Michael S. Rywant, Esq., and the Affidavit of George A. Vaka, Esq., both of whom are fee experts. Doc. No. 182, at 42-49; Doc. No. 196-1; Doc. No. 196-2. GEICO supports its

opposition to the request for attorneys' fees with the Affidavit of Joseph T. Kissane, Esq., its fee expert.   Doc. No. 189-1.

In his affidavit, Attorney Rywant attests that he graduated from law school in 1977 and that he has practiced law continuously in Florida since that time.   Doc. No. 182, at 42.   He specializes in personal injury, wrongful death, and insurance coverage litigation.   *Id.*   He has served as lead trial counsel in 18 bad faith trials and handled more than 300 bad faith/extracontractual liability claims.   He frequently handles cases in the Tampa market.   He has been qualified as an expert witness on bad faith/extracontractual liability in both federal and state courts.   Doc. No. 196-1, at 2.   He reviewed Attorney Bush's litigation file in this case as well as unidentified orders from state and federal courts awarding attorneys' fees.   Doc. No. 182, at 43.   After considering the requirements of Florida law regarding determination of an appropriate fee, Attorney Rywant opines that the reasonable hourly rate for Attorney Bush is $500.00, for Attorney Wimsatt is $300.00, for Attorney Kuhn is $260.00, and for Paralegal Brooks is $100.00.   *Id.* at 48.   Attorney Rywant provided no information about the background and experience of any of these individuals. Attorney Rywant supported his supplemental affidavit with a 2008 Report and Recommendation on attorney's fees issued in a bad faith action arising in the Tampa Division of this Court, Doc. No. 196-1, at 4–16, and a 2015 final judgment addressing attorney's fees in a proposal for settlement case in the Circuit Court in and for Pinellas County, Florida, which is in the Tampa Division of this Court, *id.* at 18–21.[3]

Attorney Vaka avers that he has practiced law in Florida since 1983.   He is a board certified appellate lawyer.   Doc. No. 196-2, at 1.   Among other distinctions, he was named Lawyer of the

---

[3] The final judgment is not helpful in the present analysis because it contains only the Circuit Judge's conclusions without supporting facts regarding the experience of counsel and other factors cited by the Judge.

Year in insurance practice in Tampa by *Best Lawyers* for 2014, and he was appointed as a fellow for the American College of Coverage and Extra-Contractual Counsel. *Id.* at 2. He attests that he has actively litigated more than 1000 civil matters, although he does not attest that any of these cases arose from a claim of bad faith failure to settle an insurance claim. *Id.* He has been recognized as an expert in the area of attorneys' fees. *Id.* at 4. He reviewed documents maintained by Diperna's counsel in this case and in the Underlying Action. *Id.* at 5-6. He also reviewed the CVs of the attorneys involved in this case, *id.* at 6, but he provided the Court with only limited information about the background and experience of those attorneys. He is also familiar with the skill and experience of counsel for Diperna and GEICO in this case. *Id.* at 7. He opined that an appropriate rate for Attorney Bush would be $500.00 per hour, for Attorneys Wimsatt and Kuhn would be between $275.00 and $350.00 per hour, and for Paralegal Brooks would be between $100.00 and $150.00 per hour. *Id.* at 8. He supported his affidavit with an award of attorney's fees by a Circuit Court judge in Pinellas County. *Id.* at 9–31.

Attorney Kissane attests that he has been a member of the Florida bar since 1985, when he graduated from law school. He is an AV rated lawyer with Martindale, and he has been named in *Florida Trend*'s Legal Elite, *Best Lawyers in America*, *Super Lawyers*, and Jacksonville Magazine's Best Lawyers list. Doc. No. 189-1, at 1, 8. He is the author of the *Florida Tort and Insurance Survival Guide*, and he coordinates an annual full-day seminar to educate insurance professionals on Florida bad faith law. *Id.* at 1. His practice includes handling cases in state and federal courts. He has represented parties in insurance bad faith cases in the Middle District of Florida on multiple occasions. *Id.* at 2. He has also been an expert witness in insurance bad faith cases, including as an expert on fee issues regarding insurer bad faith. *Id.* He attests that he is familiar with fees charged in the Middle District of Florida and in the central Florida market. *Id.* Attorney Kissane

attests that Attorney Kuhn was admitted to the Florida bar in 2006, and that Attorney Wimsatt was admitted to the Florida bar in 2009.  *Id.* at 3.  After considering the requirements of Florida law regarding determination of an appropriate fee, and reviewing various records in this case, *id.* at 2– 4, Attorney Kissane opines that the reasonable hourly rate for an attorney with experience similar that of Attorney Bush would be $325.00 to $400.00 per hour, *id.* at 4.  He further opines that a reasonable hourly rate for lawyers with six to nine years of experience would be $175.00 to $225.00 per hour.  *Id.* at 4.

In the reply memorandum, counsel for Diperna asserts that Attorney Kissane is not a persuasive expert because he is based in Jacksonville and, therefore, he has no "knowledge on the reasonable market rate for attorneys who handle bad faith cases located in Tampa, Florida."  Doc. No. 196, at 2.  The relevant market in this case is Orlando, not Jacksonville or Tampa. Nevertheless, opinions from fee experts on reasonable fees in the Middle District of Florida offer some evidence that the Court can consider, along with its own knowledge of reasonable fees in the Orlando market, in determining the reasonable hourly rates in this case.  *See Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (observing that a court is itself an expert concerning reasonable and proper fees and may form an independent judgment as to the same).

Counsel for Diperna also asserts that Attorney Kissane's opinion should not be considered because he does not state "how many . . . insurance bad faith cases he has tried to completion in general or in the Middle District of Florida."  Doc. No. 196, at 1.  I note that Attorney Vaka also does not state how many insurance bad faith cases he has tried to completion.  Nevertheless, the skill and experience of Attorneys Kissane, Vaka and Rywant provide a sufficient foundation to consider their opinions on the issue of the reasonable fees in Orlando in cases of this type.

Finally, counsel for Diperna asserts that the cases cited in Attorney Kissane's affidavit are not persuasive because they did not rise in the context of a bad faith failure to settle an insurance claim.   Counsel is correct that the cases cited by Attorney Kissane do not involve bad faith failure to settle claims, but some of them involve first party insurance claims.   Those cases provide some relevant information on the prevailing market rate for attorneys in the Middle District of Florida.[4]

        2.   <u>Reasonable Hourly Rates.</u>

Diperna requests fees at the hourly rates of $500.00 for Attorney Bush; $300.00 for Attorney Wimsatt; $260.00 for Attorney Kuhn; and $100.00 for Paralegal Brooks.   Doc. No. 182, at 4.   As the party seeking fees, Diperna bears the burden of establishing the prevailing market rate.   *Rowe*, 472 So. 2d at 1151.   In addition to the affidavits of the fee experts, addressed above, Diperna supports his request for fees with the Affidavit of Ronald E. Bush, one of his counsel of record. Doc. No. 182, at 10–12.

Attorney Bush avers that he graduated from law school in 1985.   He is a member of the American Board of Trial Advocates, he has been awarded an AV rating by Martindale, and he has been selected as a Florida Super Lawyer annually since 2008 and selected as member of the Florida Legal Elite in 2012.   *Id.* at 10.   He does not state the number of bad faith insurance claims he has tried to verdict, although the Court is aware that he was trial counsel in the present case.   He attests that his reasonable hourly rate is $500.00 per hour, *id.* at 11, but he does not cite to any case in which a court found this to be a reasonable hourly rate for his work.

Attorney Bush also attests that Attorneys Kuhn and Wimsatt and Paralegal Brooks performed work in this case.   He did not provide any information about the background and

---

        [4]  I will not consider the decision in *Cannon v. Astrue*, No. 3:10-cv-243-J-TEM, 2011 WL 6317762 (M.D. Fla. Dec. 15, 2011), because the reasonable hourly rate in that case was capped by statute.

experience of these individuals.   He attests that Attorney Kuhn's reasonable hourly rate is $260.00, that Attorney Wimsatt's reasonable hourly rate is $300.00 and that Paralegal Brooks's reasonable hourly rate is $100.00.   *Id.*   He did not cite any case in which a court found these hourly rates to be reasonable for these individuals.

GEICO objects to the hourly rates sought for work performed by Attorneys Bush, Kuhn and Wimsatt.   Doc. No. 189, at 4–6.   It does not object to the hourly rate sought for Paralegal Anne Brooks.   Because Diperna has not provided any information about the skill and experience of Attorneys Wimsatt and Kuhn, he has not carried his burden of establishing the reasonable hourly rate for these individuals in the Orlando market.

Attorneys Kissane and Vaka provide some of the missing information.   Attorney Kissane attests that Attorney Kuhn, for whose work $260.00 per hour is sought, was admitted for the Florida bar in 2006.   He further attests that Attorney Wimsatt, for whose work $300.00 per hour is sought, was admitted to the Florida bar in 2009.   Doc. No. 189-1, at 3. Attorney Vaka attests that Attorney Kuhn has been in practice for less time than Attorney Wimsatt, Doc. No 196-2, at 8, so it appears likely that Attorney Wimsatt was admitted to another bar before his admission to the Florida bar in 2009.   Attorney Vaka also avers that Attorney Kuhn previously worked as an assistant state attorney, in which capacity he tried more than 50 cases.   *Id.* at 7.

I have reviewed all of the papers and evidence presented and the cases cited by the parties. The following cases offer the most relevant information about the reasonable hourly rates in the present case.

In 2008, Magistrate Judge Pizzo in the Tampa Division of this Court considered an attorney's fee petition under § 627.428 in a bad faith failure to settle case resolved after a jury trial.   Doc. No. 196-1, at 4–21.   Judge Pizzo recommended that the Court find that a rate of $350.00 to $400.00

was reasonable for the work of an attorney with more than 30 years of experience.  *Id*. at 8.[5]  He

recommended that the Court find that $225.00 to $250.00 was reasonable for the work of an attorney

with 10 years of experience, and that $100.00 to $125.00 was reasonable for the work of an attorney

with approximately 3 years of experience.  *Id.*  The presiding District Judge did not address Judge

Pizzo's recommendations before the case settled.

In 2010, District Judge Covington and Magistrate Judge Wilson in the Tampa Division of

this Court considered an attorney's fee petition pursuant to § 627.428 in a first party insurance claim.

Judge Wilson recommended a rate of $275.00 per hour for an attorney with 20 years of experience

in insurance litigation, which recommendation was adopted by Judge Covington.  *Ottaviano v.

Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1268–69 (M.D. Fla. 2010).

In 2015, a Circuit Court Judge in Pinellas County, Florida, addressed an attorney's fee

petition pursuant to § 627.428 in a bad faith claim case that was resolved after a jury trial.  *Rahdert,

Steele & Reynolds, P.A. v. Nationwide Mut. Fire Ins. Co.*, No. 11-007651-CI-008 (Fla. 6th Judicial

Cir. Ct. Dec. 21, 2015) ("*Rahdert*").[6]  After considering the opinions of fee experts and based on

his knowledge of the case, the Judge found that hourly rates from $375.00 to $550.00 were

reasonable but the experience of the lawyers is not set forth in the decision.  Doc. No. 196-2, at 21–

22.  The Judge noted that "this was a complex case, involving difficult and novel questions

regarding bad faith and an insurance carrier's duty to defend, the competency of an insurance

company's in house counsel, agency issues, an insured's right to control its defense, and [an]

---

[5]  The years of experience of the attorneys are set forth in Plaintiffs' Second Amended Motion for Attorneys' Fees, *McDonald v. GEICO Gen. Ins. Co.*, No. 8:05-cv-73-T-17MAP, Doc. No. 269 (M.D. Fla. April 10, 2008).

[6]  A copy of the *Rahdert* decision is attached to Attorney Vaka's affidavit.  Doc. No. 196-2, at 9–31.

insured's right to demand compensation for attorney's fees when its carrier fails to provide it with a defense and initially defends under a reservation of rights."   *Id.* at 23.

My review of the record in the present case reflects that the issues litigated here were not nearly as complex as those litigated in *Rahdert*.   The record reflects that there were few disputes in the discovery phase of this case.   In his summary judgment motion, Diperna argued that "GEICO breached its duty of good faith to Mr. Umberger as a matter of law when it abdicated to Mr. Umberger the responsibility of complying with one of the conditions of the settlement offer, failed to follow up with Diperna's attorney to ensure he had received and approved of GEICO's proposed release, and failed to information Mr. Umberger that Diperna's claim against him had entered into litigation."   Doc. No. 95, at 13 (citing Doc. No. 43, at 5–6).   The Court denied the summary judgment motions filed by both parties, finding that genuine issues of material fact existed precluding entry of summary judgment.   *Id.* at 21.   The Court's instructions to the jury were not complex, Doc. No. 133, and the verdict form simply asked whether Diperna had proven his claim by a preponderance of the evidence, Doc. No. 134.   Accordingly, I recommend that the Court find that the Judge's opinion on reasonable hourly rates in *Rahdert* is not persuasive in this case due to the difference in complexity of the issues in that case and the present case.

Nevertheless, this was a contested case that resolved only after five days of a jury trial. Based on all of the evidence in the record and my knowledge of reasonable hourly rates in the Orlando market, I recommend that the Court find that a reasonable hourly rate for the work of Attorney Bush is $400.00.   The time sheets reflect that Attorney Wimsatt performed work from the inception of this matter in 2012 through 2014, including reviewing the files in the underlying litigation, interviewing Mr. Umberger, preparing discovery requests and documents filed with the Court and appearing at depositions.   Doc. No. 182, at 14–31.   Because of his involvement in

significant parts of the litigation, I recommend that the Court find that $225.00 per hour is reasonable for his work in this case.  The time sheets reflect that Attorney Kuhn's involvement in this case began in 2014, and that his work was predominantly directed to preparing exhibits for trial, preparing trial witnesses and attending the trial.  *Id.* at 32–40.  Review of the trial transcripts reveals that Attorney Kuhn made some legal arguments and examined witnesses.  *See, e.g.*, Doc. No. 162, at 118–23, 166–74; Doc. No. 164, at 259–71, 280–81; Doc. No. 165, at 89–104.  Because of Attorney Kuhn's role in the trial of the case, I recommend that the Court find that $225.00 per hour is also reasonable for his work in this case.

Although Diperna has not provided the Court any information concerning Paralegal Brooks's experience or credentials, GEICO does not object to the hourly rate sought for her work. In the absence of objection, I recommend that the Court find that $100.00 per hour is a reasonable rate for Paralegal Brooks.

In sum, I recommend that the Court assess attorneys' fees at an hourly rate of $400.00 per hour for Attorney Bush, $225.00 per hour for Attorney Kuhn, $225.00 per hour for Attorney Wimsatt, and $100.00 per hour for Paralegal Brooks.

### 3.    Reasonable Number of Hours.

Diperna requests an award of attorneys' fees for 259.70 hours of work performed by Attorney Bush; 682.10 hours of work performed by Attorney Wimsatt; 142.60 hours of work performed by Attorney Kuhn; and 99.50 hours of work performed by Paralegal Brooks.  Doc. No. 182, at 4.  He has submitted timesheets, which include itemized breakdowns of the tasks those individuals performed and the time allocated to those tasks.  Doc. No. 182, at 14–41.

GEICO opposes the reasonableness of the hours that Diperna claims, and it has provided a log identifying the specific entries to which it objects.  Doc. No. 189-2.  Specifically, GEICO

argues that many of Attorney Wimsatt's time entries are vague and excessive for the tasks performed, inappropriately use "block billing" rather than describing each task performed and the time devoted to each task, and are sometimes duplicative.   Doc. No. 189-2; *see generally Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (per curiam) ("[B]efore the attorneys submit their fee request, they must exercise their own billing judgment to exclude any hours that are 'excessive, redundant, or otherwise unnecessary.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))).   GEICO also objects to vague, excessive and block billing by Attorney Kuhn.[7]   *Id.*

In its objection log, GEICO objects to 194.8 hours worked by Attorney Wimsatt.   Doc. No. 189-2.   After review of the time entries to which GEICO objects, I recommend that the Court sustain most of those objections.    For example, while it is the case that "review and analysis" of documents is a necessary aspect of litigation, vague references concerning such "review and analysis" pervade Attorney Wimsatt's time entries, offering little in the way of the meaningful detail necessary for the Court to determine whether the hours worked were reasonable for the tasks performed.   *See, e.g.*, Doc. No. 189-2.   Attorney Wimsatt also improperly utilizes block billing, such as his entries for preparation of summaries for unidentified individual deponents.   *Id.* at 2. Nevertheless, I recommend that the Court not sustain the objection to 31.7 hours worked by Attorney Wimsatt in preparing the opposition to GEICO's motion for summary judgment.   *Id.* at 3.   Review of the response to the motion for summary judgment shows that it is appropriately supported by

---

[7] I note that counsel for GEICO did not include in its objection log all of the time Attorney Kissane opined was not reasonable.   *Compare* Doc. No. 189-2, *with* Doc. No. 189-1, at 6.   Objections and proof from fee opponents must be specific and reasonably precise.   *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (citing *Norman*, 836 F.2d at 1301).   Accordingly, I recommend that the Court find that the only specific and reasonably precise objections to the hours worked are those addressed in GEICO's objection log.

Case 6:12-cv-00687-CEH-KRS   Document 204   Filed 04/18/16   Page 15 of 36 PageID 4994


pinpoint citations to evidence in the record and a discussion of relevant law, Doc. No. 51, and GEICO has not cited with specificity the hours it contends were duplicative of the work of others. In sum, I recommend that the Court find that Attorney Wimsatt reasonably worked 519 hours in this case.[8]

GEICO also objects to 38 hours worked by Attorney Kuhn as vague, excessive and improper block billing.   Doc. No. 189-2, at 4.   Attorney Kuhn described most of this work as preparation for trial including some, but apparently not all, tasks performed.   *Id.*   I recommend that the Court find that these time entries are too vague to permit meaningful review.   The last entry to which GEICO objects is 6.7 hours Attorney Kuhn recorded for preparing the request for final judgment, proposed final judgment, the motion for final judgment and the motion for attorney's fees.   *Id.* While the better practice would have been to allocate the time worked preparing each document, overall 6.7 hours is reasonable for all of the work performed.[9]   Therefore, I recommend that the Court overrule the objection to 6.7 hours worked by Attorney Kuhn and find that he reasonably worked 111.3 hours in this case.[10]

In the absence of specific objections, I recommend that the Court find that the hours worked by Attorney Bush and Paralegal Brooks were reasonable.

---

[8] Computed as follows:   194.8 hours objected to – 31.7 hours for which objections should be overruled = 163.1 hour reduction; 682.1 hours requested – 163.1 reduction in hours = 519 hours reasonably worked.

[9] Counsel for GEICO argues that fees are not awardable for the time worked litigating the amount of fees to be awarded.   Doc. No. 189, at 13.   I find 6.7 hours to be reasonable for preparing the documents described in Attorney Kuhn's time entry, including preparing a motion to determine entitlement to attorney's fees, even when the time for preparing a motion for assessment of attorney's fees is excluded.

[10] Computed as follows:   38.0 hours objected to – 6.7 hours for which objections should be overruled = 31.3 hour reduction; 142.60 hours requested – 31.3 reduction in hours = 111.3 hours reasonably worked.

4.   Lodestar Figure.

In light of the foregoing, the lodestar sum is as follows:

| Professional | Hourly Rate | Reasonable Hours | Total |
|---|---|---|---|
| Ronald E. Bush, Esq. | $400.00 | 259.7 | $103,880.00 |
| James J. Wimsatt, Esq. | $225.00 | 519.0 | $116,775.00 |
| Brandon T. Kuhn, Esq. | $225.00 | 111.3 | $25,042.50 |
| Anne E. Brooks | $100.00 | 99.5 | $9,950.00 |
| **TOTAL** | | | $255,647.50 |

5.   Contingency Risk Multiplier.

Counsel for Diperna was retained in this case on a contingency fee basis.   Doc. No. 202-1.

In cases taken on a contingency fee basis, the Court has the discretion to apply a multiplier to the

lodestar figure.   For those cases,

> [i]f the trial court determines that success was more likely than not at the outset, it
> may apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of
> success was approximately even at the outset, the trial judge may apply a multiplier
> of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset
> of the case, it may apply a multiplier of 2.0 to 2.5.

*Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990).   Enhancing attorneys' fees

by a multiplier is not mandatory in contingency fee cases, and the party requesting the multiplier

bears the burden of proving that it is appropriate.   *Shelton v. Liberty Mut. Fire Ins. Co.*, No. 8:12-

cv-2064-T-30AEP, 2014 U.S. Dist. LEXIS 19874, at *4 (M.D. Fla. Feb. 18, 2014).

Florida courts have noted a strong presumption that the lodestar represents the reasonable

fee — a presumption that is overcome only in "rare" and "exceptional" circumstances.   *Federated*

*Nat'l Ins. Co. v. Joyce*, 179 So. 3d 492, 493 (Fla. 5th Dist. Ct. App. 2015) (per curiam); *State Farm*

*Fla. Ins. Co. v. Alvarez*, 175 So. 3d 352, 358 (Fla. 3d Dist. Ct. App. 2015).   The Florida Supreme

Court has identified the following as factors a trial court should consider in determining whether a multiplier is necessary: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment; and (3) whether any other factors involved, such as the amount involved, results obtained, or type of fee arrangement warrant a multiplier.   *Quanstrom*, 555 So. 2d at 834.   "Evidence of these factors must be present to justify utilization of a multiplier."   *Id.*

Diperna requests that the Court apply a contingency risk multiplier of 2.25 to the lodestar sum.   In support of his request, Diperna relies on the Affidavit of Nicholas P. Panagakis, who was counsel for Diperna in the Underlying Action.   Attorney Panagakis attests that one attorney in south Florida who he contacted declined to represent Diperna in pursuit of his bad faith claim because "he did not think there was a high enough likelihood of success to justify the anticipated expenditure of time, effort, money and risk of non-payment."   Doc. No. 182, at 50.   Diperna also relies on an affidavit of Attorney Rywant, one of his fee experts, who avers that, in Florida generally, "[d]ue to the limited number of attorneys specializing in this area of the law, the application of a contingency risk multiplier is necessary in order to obtain competent counsel."   Doc. No. 182, at 45.

In opposition, Attorney Kissane, GEICO's fee expert, opines that many competent lawyers in the Middle District of Florida would have agreed to represent Diperna in this case without a contingency risk multiplier, and that the fee shifting provisions of § 627.428 would have served as an incentive to attract such counsel.   Doc. No. 189-1, at 5–6.

After reviewing the parties' conflicting expert opinions and arguments, I recommend that the Court conclude that a contingency risk multiplier is not appropriate in this case.   Attorney Kissane's opinion that there are experienced law firms in the central Florida market who would have taken this case without a contingency multiplier is supported by case law.   *See, e.g., Rynd v.*

*Nationwide Mut. Fire Ins. Co.*, No. 8:09-CV-1556-T-27TGW, 2012 U.S. Dist. LEXIS 37973, at *51 (M.D. Fla. Jan. 25, 2012) (noting, in a bad faith case, that "there are law firms experienced in insurance litigation that are willing to take cases based on an unenhanced statutory fee, so that it is not apparent that the expectation of a multiplier would be dispositive in counsel accepting counsel"), *adopted by* 2012 U.S. Dist. LEXIS 37732 (M.D. Fla. Mar. 15, 2012); *Jablonski v. St. Paul Fire & Marine Ins. Co.*, No. 2:07-cv-00386, 2010 U.S. Dist. LEXIS 34176, at *32 (M.D. Fla. Apr. 7, 2010) ("[A] contingency risk multiplier is not appropriate in this [bad-faith] case because, while the relevant market for insurance litigation does typically require a contingent fee arrangement to incentivize competent counsel, it does not require a multiplier."); *see also State Nat'l Ins. Co. v. White*, No. 8:10-cv-894-T-27TBM, 2012 U.S. Dist. LEXIS 171789, at *27 (M.D. Fla. Oct. 26, 2012) ("[C]ompetent representation in such insurance disputes does not hinge upon the possibility of a contingency risk multiplier. . . . [T]he fee statute itself offers adequate incentive to assure that competent counsel are available . . . ."), *adopted by* 2012 U.S. Dist. LEXIS 172007 (M.D. Fla. Dec. 3, 2012).   That one attorney in south Florida declined the case is not persuasive evidence that no attorney would have taken the case without the possibility of a contingency fee multiplier.   Indeed, the record reflects that Diperna did, in fact, obtain competent counsel, which counsel does not aver that BGRP would not have declined representation but for the likelihood of a contingency multiplier. *Cf. McDonald*, Doc. No. 196-1, at 14 (noting that "Attorney Robert Mayes testified that he entered the case with the anticipation of receiving a multiplier pursuant to *Rowe* and *Quanstrom* if successful").

Additionally, counsel for Diperna's time sheets reflect that counsel viewed this case as more likely for success than not from the outset.   The complaint was filed on April 9, 2012, in state court. Doc. No. 2.   Before the complaint was filed, Attorney Wimsatt conducted fact and legal research

for the purpose of filing a motion for summary judgment soon after the case was filed, which supports the conclusion that Diperna's counsel thought they had a likelihood of success from the outset of the case.   Doc. No. 182, at 15 (entries for 3/14/2012 through 3/21/2012).

As for mitigation of the risk of nonpayment, the evidence establishes that Diperna could not afford to pay his counsel's fees or advance costs.   Doc. No. 182, at 3.   However, counsel for Diperna included some mitigation of risk in the contingency fee agreement by asking Diperna to agree to a contingency fee percentage that "exceed[s] the fee structure which has been authorized by the Supreme Court absent court approval with respect to the total fee being charged on any recovery above $1,000,000.00."   Doc. No. 202-1, at 2.   Counsel further mitigated the risk by providing in the contingency fee agreement that, if successful, Diperna would owe fees to his counsel from his damages award unless that Court awarded a fee greater than that which Diperna would otherwise be required to pay.   *Id.* at 4.

Diperna also has not shown that use of a multiplier is justified based on other factors.   There is no evidence that this case precluded counsel from undertaking other representation.   The Court's records reflect that BGRP appeared in four other cases in this Court alone between the filing of the complaint and the jury's verdict in the instant case, which suggests that litigating the present case did not prevent BGRP from undertaking representation in other cases.   *See Walter v. Sunrise Senior Living Servs., Inc.*, No. 8:13-cv-3000-T-35EAJ, Doc. No. 1 (M.D. Fla. Nov. 26, 2013); *Cureton v. Sunrise Senior Living Servs., Inc.*, No. 8:13-cv-704-T-33TBM, Doc. No. 1 (M.D. Fla. Mar. 19, 2013); *Culbreath Isles Prop. Owners Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. 8:12-cv-2928-T-26EAJ, Doc. No. 2 (M.D. Fla. Dec. 28, 2012); *Lee v. Lexington Ins. Co.*, No. 8:12-cv-1787-T-24TGW, Doc. No. 4 (M.D. Fla. Sept. 17, 2012).   Finally, while Diperna's fee experts opined that counsel for GEICO in this case are tenacious litigators who make litigation difficult, Doc. No. 196-

1, at 2; Doc. No. 196-2, at 7, review of the docket in this case does not reflect aggressive conduct of GEICO's counsel of the type sometimes seen in other litigation.

In sum, Diperna has not presented evidence that the Orlando market requires a contingency risk multiplier to obtain competent counsel.   Counsel for Diperna took some steps to mitigate the risk in this case through the terms of the contingency fee agreement.   Finally, Diperna has not established that other factors warrant a multiplier.   For these reasons, I recommend that the Court find that this is not one of the rare cases in which a multiplier is appropriate in the exercise of the Court's discretion.

In light of the foregoing, I recommend that the Court award attorney's fees in the total amount of $255,647.50 for work performed in this Court.

> 6.    Prejudgment Interest.

In *Quality Engineered Installation, Inc. v. Higley South, Inc.*, 670 So. 2d 929, 930–31 (Fla. 1996), the Florida Supreme Court held that prejudgment interest on an award of attorney's fees "accrues from the date the entitlement to attorney fees is fixed through agreement, arbitration award, or court determination, even though the amount of the award has not yet been determined."   The Court further stated that such interest "ceases to accrue on amounts of attorney fees up to the amount for which an actual tender of payment is made."   *Id.*   Prejudgment interest accrues in the amount established by § 55.03, Florida Statutes.   *Id.*   In its response to the motion, GEICO does not argue that Diperna is not entitled to prejudgment interest on an award of attorneys' fees.

Nevertheless, neither party identified for the Court the date on which Diperna became entitled to an award of attorneys' fees.   In *American Honda Motor Co. v. Fontana*, Nos. CVA1 05-61, CVA1 05-67, CVA1 05-94, CVA1 06-04, 2007 WL 1427554, at *11 (Fla. 9th Judicial Cir. Ct. May 7, 2007) (per curiam), the court determined that the trigger date for prejudgment interest on an

award of attorney's fee is the date the court determines such entitlement.   The present motion for

an award of attorney's fees seeks a determination that Diperna is entitled to such fees.   Doc.

No. 182, at 2, 6.   Because this Court will not resolve the issue of entitlement to an award of

attorney's fees until it rules on this Report and Recommendation, I recommend that the Court find

that prejudgment interest on attorneys' fees for work in this Court runs from the date of its Order on

this Report and Recommendation through the date that an second amended final judgment is issued

to include the amount of attorneys' fees and costs awarded.

> B.     *Costs Related to Work Performed at the Trial Level.*

Federal Rule of Civil Procedure 54(d)(1) provides that a court should award costs — other

than attorneys' fees — to a prevailing party.   However, a court does not have unbridled discretion

to reimburse a winning litigant for every expense he incurred in a case.   *Farmer v. Arabian Am. Oil

Co.*, 379 U.S. 227, 235 (1964), *disapproved on other grounds by Crawford Fitting Co. v. J.T.

Gibbons, Inc.*, 482 U.S. 437 (1987).   Instead, it must tax only those costs authorized by statute.

*EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000).

Rule 54(d) creates a presumption in favor of awarding costs.   *Matthews v. Crosby*, 480 F.3d

1265, 1276 (11th Cir. 2007).   Therefore, when challenging specific costs, the losing party bears the

burden of demonstrating that those costs are not taxable, unless knowledge regarding the cost rests

exclusively with the prevailing party.   *Williams v. Marion Cty. Pub. Sch.*, No. 5:11-cv-641-Oc-

34PRL, 2014 U.S. Dist. LEXIS 116020, at *3 (M.D. Fla. July 21, 2014), *adopted by* 2014 U.S. Dist.

LEXIS 116018 (M.D. Fla. Aug. 20, 2014).

In this case, the Clerk taxed $21,005.60 in costs.[11]   Doc. No. 177.   GEICO does not dispute

that Diperna, having prevailed at trial and on appeal, is entitled to an award of costs and to the

---

[11] Diperna filed a proposed amended bill of costs with his response to GEICO's objection.   Doc.
Nos. 187-1, 187-2.   He represents that the proposed amended bill is "substantively the same as the previously

assessment of post-judgment interest.   It does, however, object to certain of the costs sought by Diperna, and seeks to have the overall award reduced to $5,185.66.[12]   Doc. No. 184, at 14.   I will discuss Diperna's specific objections in the following sections.

          1.     <u>Fees of the Clerk.</u>

The Clerk taxed $544.36 for "[f]ees of the Clerk."   Doc. No. 177, at 1.   That sum includes $17.81 in Federal Express fees, in connection with a request for a certified judgment from the Brevard Clerk of Court.   *Id.* at 6.   Federal Express expenses, however, are not taxable under § 1920.   *See MKT Reps S.A. de C.V. v. Std. Chartered Bank Int'l (Ams.) Ltd.*, No. 10-22963-CIV-O'SULLIVAN, 2013 U.S. Dist. LEXIS 46131, at *17–18 (S.D. Fla. Mar. 28, 2013); *Four Green Fields Holdings, LLC v. Four Green Fields, an Irish Pub, Inc.*, No. 8:10-cv-2800-T-27EAJ, 2011 U.S. Dist. LEXIS 126707, at *9–10 (M.D. Fla. Oct. 17, 2011), *adopted by* 2011 U.S. Dist. LEXIS 126699 (M.D. Fla. Nov. 1, 2011); *cf. Watson v. Lake County*, 492 F. App'x 991, 997 (11th Cir. 2012) (per curiam) (holding that a district court abused its discretion in taxing the costs for shipment of depositions).   This expense should, therefore, be disallowed.

The "[f]ees of the Clerk" sum also includes $5.00 for a certified copy of the judgment from the Brevard County Clerk of Court.   Doc. No. 177, at 6.   GEICO argues that the cost of the certified copy of the judgment from a state court is not a "fee[] of the Clerk," within the meaning of 28 U.S.C. § 1920(1).   Doc. No. 184, at 4–5.   Even assuming that the cost is not taxable under

---

filed . . . Bill of Costs and Affidavit to which GEICO's Response in Opposition addresses, with the exception being Diperna has slightly reduced certain costs in light of the objections raised in GEICO's Response in Opposition."   Doc. No. 187, at 5.   However, the proposed amended bill of costs seeks to add costs not enumerated in the original Bill of Costs taxed by the Clerk (Doc. No. 177).   Diperna has presented no authority permitting him to increase his proposed taxable costs in response to an objection to those costs. Therefore, I consider the proposed amended bill of costs only to the extent that it represents Diperna's concession that some of the costs taxed by the Clerk should be reduced.

[12] Although Diperna also originally requested prejudgment interest on the costs to be taxed, he abandoned that request after GEICO objected.   Doc. No. 187, at 17.

§ 1920(1),[13] it still plainly falls within the ambit of § 1920(4).   That provision permits the Court to tax costs for certified copies of state court records necessarily obtained for use in this case.   *See Bumpers v. Austal U.S.A., L.L.C.*, No. 08-00155-KD-N, 2015 U.S. Dist. LEXIS 150734, at *38 (S.D. Ala. Nov. 5, 2015); *PNC Bank Nat'l Ass'n v. Orchid Grp. Invs.*, No. 2:13-cv-12-FtM-38CM, 2014 U.S. Dist. LEXIS 140288, at *4–5 (M.D. Fla. Oct. 2, 2014).   To the extent Diperna listed the cost in the incorrect category in his proposed bill of costs, the mistake was harmless, and recovery should not be denied on that basis.

GEICO also argues that the cost should be disallowed because the parties agreed that "Records Custodians are waived to prove authenticity, except when authenticity has been specifically objected to."   Doc. No. 184, at 5 (quoting Doc. No. 64, at 11) (internal quotation marks omitted).   Noting that it never raised an issue as to the authenticity of the documents, GEICO reasons that the certified copy was not necessarily obtained for use in this case.   *Id.*   However, Diperna obtained the certified copy of the judgment in the Underlying Action before the complaint in the present case was filed and before counsel for the parties reached an agreement regarding authenticity.   Therefore, Diperna reasonably believed it was necessary to obtain a certified copy of the judgment to guard against the possibility of objection to the document, and the $5.00 cost for the same is properly taxable.   *See W&O Inc.*, 213 F.3d at 623 (noting that courts should consider whether the party "reasonably believed" the copies were necessary).

Accordingly, $17.81 should be deducted from the "Fees of the Clerk" assessed, which results in a total of $526.55 as the amount to which Diperna is entitled under this category.

---

[13] Some courts have indicated that section 1920(1) does not provide for the taxing of clerk's fees paid to state courts.   *See Semler v. GEICO Gen. Ins. Co.*, No. CIV-11-1354-D, 2014 U.S. Dist. LEXIS 166508, at *2 (W.D. Okla. Dec. 1, 2014); *Gregory v Allied Prop. & Cas. Ins. Co.*, No. CIV S-10-1872 KJM EFB, 2013 U.S. Dist. LEXIS 33431, at *5 (E.D. Cal. Mar. 11, 2013).   Other courts disagree, at least with respect to certain fees.   *See, e.g.*, *Lear Siegler Servs. v. Ensil Int'l Corp.*, No. SA-05-CV-679-XR, 2010 U.S. Dist. LEXIS 62882, at *3–5 n.5 (W.D. Tex. June 23, 2010) (citing cases).

2.   <u>Fees for Service of Summons and Subpoenas.</u>

The Clerk taxed $1,100.00 for "[f]ees for service of summons and subpoena[s]."  Doc. No. 177.   That sum includes subpoena fees for Giselle Betancourt, Karen Torpy, and April Castillo-Bardales.   GEICO objects to $165.00 of these costs, because those individuals did not testify at trial and were not necessary to the litigation.[14]   Doc. No. 184, at 11, 13.

Diperna served his initial witness list on August 15, 2013, and his amended witness list on November 20, 2013.   Doc. Nos. 64-3, 98.   Neither list included Giselle Betancourt or Karen Torpy.   Given those omissions, Diperna's issuance of trial subpoenas to them was unreasonable, and the objections to the related $110.00 in costs should be sustained.[15]   *See Goldberg v. Pac. Indem. Co.*, No. CV-05-2670-PHX-JAT, 2009 U.S. Dist. LEXIS 57601, at *7 (D. Ariz. June 23, 2009) (rejecting a defendant's request for subpoena costs pertaining to witnesses who were not specifically listed on the defendant's witness list, noting that "Defendant should have been prepared for the exclusion of those witnesses at trial"); *see also* Doc. No. 177, at 11.

Castillo-Bardales was similarly left off of Diperna's witness list.   Diperna argues, however, that a subpoena fee for her should be allowed because she was included on *GEICO's* witness list.   Doc. No. 187, at 16; *see also* Doc. No. 64-4, at 2.   Diperna contends that it was necessary to subpoena Castillo-Bardales because of that inclusion and because of the potential need to cross-examine and impeach her.   Doc. No. 187, at 16.   However, had GEICO called Castillo-Bardales as a witness, she would have been subject to cross-examination and possible impeachment.   The

_____

[14]  While Diperna also states an objection to any subpoena fee in excess of $55.00 per hour, GEICO's affidavit in support of the Bill of Costs did not seek to recover more than $55.00 for any individual subpoena. Doc. No. 177, at 11.   As a result, the objection is groundless.

[15]  Diperna attempts to minimize this issue, at least with respect to Betancourt, by characterizing it as a "clerical error" of which he was unaware until trial.   This argument is not compelling.   Diperna should have reviewed and been aware of the contents of his witness list before issuing trial subpoenas.

issuance of the subpoenas to a witness that Diperna did not himself intend to call, as reflected by his own witness list, was therefore mere surplusage.   The related $55.00 cost, to which GEICO objected, was consequently not necessarily incurred and should not be taxed.

Given the above, I recommend that the Court deduct $165.00 in costs related to witness subpoenas, which results in a total of $935.00 as the amount that should be taxed in this category.[16]

3.   Fees for Printed or Electronically Recorded Transcripts.

The Clerk also taxed $5,832.63 for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."   Doc. No. 177, at 1.   That sum includes $5,672.58 in fees categorized as "Court Reporter/Transcript Fees" and $160.05 in fees categorized as "Fees for Court Reporting Costs Other than Depositions: Evidentiary hearings and post[-]trial hearings."   *Id.* at 6, 7, and 12.   The "Court Reporter/Transcript Fees" relate to the depositions of Scott Turner, Nicholas Panagakis, Deborah Diperna, Daniel Diperna, Robin Gilliece, April Castillo-Bardales, Sherry Zungia, Susan Kaufman, John B. Atkinson, Giselle Betancourt, and Joseph Umberger.   Doc. No. 177, at 6–9.   GEICO requests that the Court reduce those costs to account for various concessions made by Diperna and to disallow an additional $4,302.08 of the sum taxed.   Doc. No. 184, at 13–14.   GEICO raises five categories of objections.

First, GEICO objects to the costs associated with the deposition transcript of Giselle Betancourt,[17] asserting that the deposition was not necessary because Ms. Betancourt neither testified at trial nor appeared on either party's witness list.   Doc. No. 184, at 7.   Actual use of the deposition, however, is not a prerequisite to a finding that the deposition itself was necessary. *Watson*, 492 F. App'x at 997.   Instead, the court should consider whether the prevailing party could

---

[16] The reduction is calculated as follows: $110.00 + $55.00 = $165.00.   The total taxable fees for this category are computed as follows: $1,100.00 - $165.00 = $935.00.

[17] Ms. Betancourt was Attorney Panagakis's paralegal.   *See, e.g.,* Doc. No. 162, at 186.

have reasonably believed it was necessary at the time it was conducted.   A review of the trial transcripts reveals that Betancourt was referenced by name at trial on over thirty occasions.   *See* Doc. Nos. 162 through 166.   Diperna also intended to call Betancourt to testify at trial, but he was precluded from doing so based on a clerical error that resulted in her unintentional omission from his witness list.[18]   Doc. No. 187, at 10.   Given those circumstances, Diperna had a reasonable belief the deposition of Betancourt was necessary.

Second, GEICO objects on the ground that the invoices for the depositions of Robin Gilliece, April Castillo-Bardales, and Sherry Zungia only identify a total cost, as opposed to itemized fees. Doc. No. 184, at 8.   This argument is without merit.   The "Comments" section of each invoice includes an itemized breakdown of the charges, including the appearance fee, number of pages per transcript, and cost per transcript.   Doc. No. 177, at 26–27.   With that information, simple arithmetic dictates the per-page rate, and Diperna's objection should be overruled.   *See Luka v. City of Orlando*, No. 6:07-cv-841-Orl-22GJK, 2011 U.S. Dist. LEXIS 117795, at *23 (M.D. Fla. Sept. 23, 2011), *adopted by* 2011 U.S. Dist. LEXIS 117720 (M.D. Fla. Oct. 12, 2011).

Third, GEICO objects to various charges for e-mail service, e-transcripts, compressed copies, and delivery.[19]   Doc. No. 184, at 9, 14.   Specifically, GEICO contends that the Court should exclude $20.75 for e-mail service and delivery and handling charges for Scott Turner's deposition; $15.75 in delivery and handling charges for Nicholas Panagakis's deposition; $25.75 for delivery and handling and e-transcript charges for Deborah and Daniel Diperna's depositions;

---

[18] I note that the initial witness lists were not submitted to the Court until August 15, 2013, substantially after January 23, 2013 deposition of Betancourt occurred.   Doc. No. 177, at 31.   As a result, the accidental omission of Betancourt from the witness list and amended witness list is of little to no relevance to an assessment of the propriety of the deposition cost at the time it was incurred.   As discussed above, though, the omission rendered trial subpoena costs unrecoverable.

[19] GEICO did not specifically challenge the individual charges for Susan Kaufman's deposition. Doc. No. 177, at 29.   Accordingly, I recommend that those costs be left undisturbed.

$36.00 for the condensed transcript and shipping charges for Giselle Betancourt's deposition[20]; $12.00 in shipping and handling charges for John Atkinson's deposition; $38.00 for a compressed certified copy and shipping and handling charges for Joseph Umberger's deposition; $58.00 for a condensed copy and postage and handling for Sherry Zungia's deposition; and, $106.00 for a condensed copy of Robin Gilliece's deposition, a condensed copy of April Castillo-Bardales's deposition, and postage and handling collectively for these depositions.   *Id.*; *see also* Doc. No. 177, at 26–27.   Diperna concedes that charges of these types are not recoverable.   Doc. No. 187, at 13–14; *see also Kapral v. GEICO Indem. Co.*, No. 8:13-cv-2967-T-36EAJ, 2015 U.S. Dist. LEXIS 152366, at *4–5 (M.D. Fla. Oct. 20, 2015), *adopted by* 2015 U.S. Dist. LEXIS 152365 (M.D. Fla. Nov. 10, 2015).   Because these costs are not recoverable, I recommend that the Court deduct those costs, which total $312.25.

Fourth, GEICO argues that Diperna "fails to allege why the videotaped depositions were necessary for use in this case."   Doc. No. 184, at 6.   The record reflects that GEICO noticed the video depositions of Nicholas Panagakis, Daniel Diperna, Susan Kaufman, Giselle Betancourt, Deborah Diperna and Scott Turner.   Doc. No. 187-2, at 1, 5, 16, 21, 28, 30.   "[W]hen a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed."   *Morrison v. Reichhold Chems.*, 97 F.3d 460, 464 (11th Cir. 1996) (per curiam) (footnote omitted).   Therefore, I recommend that GEICO's objection to the costs of taking these videotaped depositions be overruled.

---

[20] GEICO indicates that Diperna seeks $46.00 in condensed transcript and digital transcript charges for Betancourt's deposition, Doc. No. 184, at 14, but the amount taxed only includes charges amounting to $36.00 for such expenses, Doc. No. 177, at 8, 31.

Diperna noticed the video deposition of John Atkinson and cross-noticed the video deposition of Scott Turner.[21]   Doc. No. 187-2 at 1, 7.   Because both of these witnesses were called by GEICO and testified in the trial of this case, taking these depositions was reasonably necessary. As discussed above, because these depositions were noticed to be taken as video depositions and there is no showing the GEICO objected to this method of recording the depositions, Diperna is entitled to the costs of taking the video-taped depositions.

GEICO also objected to the costs of obtaining both a DVD or other copy of the videotaped depositions and a written transcript of those depositions for the following witnesses:   Deborah Diperna; Daniel Diperna; Giselle Betancourt; John Atkinson; and, Joseph Umberger.[22]   Doc. No. 184, at 6–7 & n.7; Doc. No. 187-1, at 24, 29, 31, 33, 35–36 (deposition invoices).   GEICO argues that Diperna is not entitled to these costs because he has not explained why both forms of copies were necessary for use in this case.   *See, e.g.*, *Maronda Homes, Inc. v. Progressive Express Ins. Co.*, No. 6:14-cv-1287-Orl-31TBS, 2015 U.S. Dist. LEXIS 144889, at *9 (M.D. Fla. Oct. 8, 2015), *adopted by* 2015 U.S. Dist. LEXIS 144892 (M.D. Fla. Oct. 26, 2015); *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, No. 07-60654-CIV-ZLOCH, 2009 U.S. Dist. LEXIS 49902, at *8 (S.D. Fla. May 1, 2009); *Ferguson v. Bombardier Servs. Corp.*, No. 8:03-cv-539-T-31DAB, 2007 U.S. Dist. LEXIS 103254, at *38 (M.D. Fla. Jan. 30, 2007), *adopted by* 2007 U.S. Dist. LEXIS 12087 (M.D. Fla. Feb. 21, 2007).

---

[21]   GEICO asked Scott Turner, Esq., to represent Mr. Umberger in the Underlying Action.   Doc. No. 164, at 226.   Counsel for GEICO called Attorney Turner to testify at the trial of this case.   *Id.* at 225. John Atkinson, Esq., was GEICO's expert in this case.   Doc. No. 165, at 12.   Counsel for GEICO called Attorney Atkinson to testify at the trial of this case.   *Id.* at 5.

[22]   GEICO argues that Diperna also sought a copy of the videotaped deposition and a transcript of the deposition of Scott Turner.   Doc. No. 184, at 7.   The invoice for the Turner deposition reflects a $193.50 fee for "Video Deposition Original."   Doc. No. 187-1, at 22.   There is no separate charge for the deposition in another format.   Therefore, GEICO has not established that Diperna received both a copy of the videotaped deposition and a separate copy of a written transcript of that deposition.

Counsel for Diperna responds that he obtained copies of these videotaped depositions to use at trial to the extent that a witness was unavailable to appear at trial or did not appear at trial pursuant to a subpoena.[23]   Doc. No. 187, at 11.   This explanation makes sense as to the videotaped depositions of witnesses Diperna intended to rely on at trial (Daniel Diperna, Deborah Diperna, Susan Kaufman, Joseph Umberger, and Giselle Betancourt), *see, e.g.*, Doc. No. 98, at 1, but not to the videotaped depositions of the expert witness GEICO intended to call at trial (John Atkinson). For witnesses who testify at trial by videotaped deposition, the Court requires a copy of the written transcript to perfect the record because the court reporter at trial does not transcribe the videotaped deposition as it is played for the jury, s*ee, e.g.*, Doc. No. 118; Doc. No. 163, at 200.   Therefore, it was necessary to have both the videotaped deposition and the written transcripts for Diperna's prospective trial witnesses.   Accordingly, I recommend that the Court sustain the objection to the costs of obtaining a copy of the videotaped deposition of John Atkinson ($100.00).[24]

In light of the above, $412.25 should be deducted from the amount the Clerk taxed for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," which results in a total of $5,360.38.[25]

    4.    <u>Fees for Witnesses.</u>

---

[23]   Counsel for Diperna also asserts that he intended to play clips of the videotaped depositions during mediation.   Doc. No. 187, at 11.   Because he does not state which depositions he intended to use, the record is insufficient to support this asserted reason for needing DVDs of videotaped depositions.

[24]   Counsel for Diperna argues in response to GEICO's objections to the taxed bill of costs that he inadvertently omitted the $60.00 charge for the DVD of one of the Diperna's depositions, and he wishes to add that cost to the costs to be taxed.   Doc. No. 187, at 13.   Counsel has offered no authority for the proposition that costs not originally sought can be added to taxed costs after an objection is raised. Therefore, I recommend that the Court not include the omitted costs of one DVD in the costs to be taxed. Even were such a request permissible, the cost should still be disallowed because Diperna has not shown why a second copy of the DVD was necessary.

[25]   The reduction is calculated as follows: $312.25 + $100.00 = $412.25.   The total taxable fees for this category is computed as follows: $5,832.63 - $412.25 = $5,420.38.

The Clerk taxed $538.00 for "[f]ees for witnesses."  That sum includes $258.00 for expert travel expenses[26] incurred by Susan Kaufman so that she could testify at trial.  Doc. No. 177, at 2. GEICO objects to that request, claiming that Diperna's failure to submit actual receipts concerning the expenses bars recovery.  Doc. No. 184, at 11–12.  Diperna does not dispute that he failed to submit the receipts; instead, he argues that the invoice from his expert seeking reimbursement for the expenses should suffice.  Doc. No. 187, at 16–17; *see also* Doc. No. 177, at 100.

GEICO's objection is well-taken, in part.  Under 28 U.S.C. § 1821(c)(3), a court may award parking fees "upon presentation of a valid parking receipt."  Here, Diperna has not submitted the expert's parking receipts.  The expert's invoice, which does not identify the relevant dates on which or locations at which the expert incurred the fees, is an insufficient substitute under the statute's plain language.  *See, e.g.*, *Kloeckner v. Perez*, No. 4:09CV00804 ERW, 2014 U.S. Dist. LEXIS 162261, at *13 (E.D. Mo. Nov. 19, 2014).  Accordingly, the Court should disallow the requested $21.00 in expert parking fees.

For hotel and meal expenses, § 1821(d) does not similarly establish an explicit requirement for receipts.  Accordingly, the expert's invoice constitutes sufficient evidence that she incurred $227.00 in hotel costs[27] and $10.00 in meal costs.  Insofar as GEICO's suggests that the invoice is too vague to establish Diperna's entitlement to recover for the entire amount incurred, however, the argument has merit.  Although the invoice itself is largely bereft of details, the record does reflect that Kaufman traveled from Davie, Florida, to testify at the trial in Orlando.  Doc. No. 163, at 89; Doc. No. 177, at 100.  Such travel was sufficiently lengthy that a subsistence allowance for an

---

[26] In the second proposed bill of costs, Diperna raised this figure to $258.80.  Given the analysis set forth below, that difference is without import.

[27] In the second proposed bill of costs, Diperna increased this amount to $227.80.  Doc. No. 187-1, at 2.

overnight stay was permissible under § 1821(d)(1).   That allowance was limited to "an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services . . . for official travel in the area of attendance by employees of the Federal Government." 28 U.S.C. § 1821(d)(2).   The invoice only suggests that Kaufman stayed in a hotel for one night in March 2014.[28] The maximum lodging per diem for Orlando at that time was $123.00, and the maximum meal per diem was $56.00.   *See FY 2014 Per Diem Rates for Orlando Florida*, U.S. GEN. SERVS. ADMIN., http://www.gsa.gov/portal/category/100120 (select "2014" from the "For Fiscal Year" drop-down box, select "Florida" in the "Select a State" drop down box, and type "Orlando" in the "City (optional)" search bar) (last visited Apr. 14, 2016).   As a result, the Court should reduce the recoverable lodging costs to $123.00.   *See, e.g.*, *Oden v. Vilsack*, No. 10-00212-KD-M, 2013 U.S. Dist. LEXIS 112464, at *61 (S.D. Ala. Aug. 9, 2013) (reducing costs related to a witness's lodging to the maximum allowable per diem).   The requested $10.00 in meal expenses, however, is fully recoverable, as it does not exceed the maximum per diem for meals.   *Id.*

In light of the above, $125.00 should be deducted from the witness fees, which results in a total of $413.00 as the amount that should be taxed.

### 5.   Fees for Exemplification and the Costs of Making Copies.

The Clerk next taxed $11,990.61 for "[f]ees for exemplification and the costs of making copies."   Doc. No. 177, at 1.   GEICO objects to the taxation of $10,112.25 that are attributable to photocopies made by BGRP, on the ground that Diperna has not adequately shown that the copies were reasonably made for use in this case, rather than for the convenience of counsel.   Doc.

---

[28]   The invoice states that Kaufman traveled to Orlando on March 31, 2014.   Doc. No. 177, at 100. She then testified on April 1, 2014, and the invoice does not indicate that she remained in Orlando that evening.   *Id.*   Moreover, Kaufman only identifies $10.00 in meal expenses, which strongly suggests that she did not spend multiple nights in Orlando.   Doc.

No. 184, at 10; *see also* Doc. No. 177, at 10.   In response, Diperna argues that its itemized list describes each printing charge "with sufficient particularity that i[t] can be readily ascertained as to what the document was and why copying costs were incurred."   Doc. No. 187, at 15.   Diperna also baldly asserts that "[t]he copying costs were reasonably incurred to generate documents for use in this case."   *Id.*

"The party seeking recovery of photocopying costs must come forward with evidence showing the nature of the documents copied, *including how they were used or intended to be used in the case.*"   *Helms v. Wal-Mart Stores, Inc.*, 808 F. Supp. 1568, 1570 (N.D. Ga. 1992) (emphasis added), *aff'd*, 998 F.2d 1023 (11th Cir. 1993) (per curiam).   An unsubstantiated claim that the documents were necessary is inadequate, "since the prevailing party alone knows for what purpose the copies were made."   *Id.*

Here, Diperna has submitted a 44-page print log.   Many of the entries are vague, to the point that the undersigned cannot plausibly determine what they concern or why they reflect permissible photocopying.[29]   Even when he has provided descriptions sufficient for the Court to infer the contents of the documents, Diperna has still not explained the use or intended use of any of the specific copies listed.   Instead, he leaves it to the Court to divine the purpose and necessity of each of these documents from his log.

On the evidence and arguments presented, I am largely unable to determine which photocopy costs, if any, were necessary for the maintenance of this action and which were obtained simply for the convenience of counsel.   *See Desisto Coll., Inc. v. Howey-in-the-Hills*, 718 F. Supp. 906, 914

---

[29] Although such deficiencies are legion throughout the log, I will provide two examples of the ambiguities.   On the lower end of the cost spectrum, Diperna makes a request for $0.25, but provides no pertinent information other than that it concerns "047110736626.pdf."   Doc. No. 177, at 48.   Toward the upper end, Diperna makes a request for $913.00, but the only description provided for the charge is "Turner Combined.pdf."   Doc. No. 177, at 58.   Such vague entries, without more, leave the Court ill-equipped to assess the taxability of the claimed costs.

(M.D. Fla. 1989), *aff'd sub nom. Desisto Coll., Inc. v. Line*, 914 F.2d 267 (11th Cir. 1990) (per curiam).   Consequently, for the vast majority of the entries in his print log, Diperna has failed to carry his burden of showing that the copies were reasonably and necessarily incurred.   *See, e.g.*, *Curry v. HSBC Tech. & Servs., LLC*, No. 6:11-cv-963-Orl-36GJK, 2013 U.S. Dist. LEXIS 146145, at *8–9 (M.D. Fla. July 15, 2013), *adopted by* 2013 U.S. Dist. LEXIS 146138 (M.D. Fla. Oct. 9, 2013).

A review of the docket does, nevertheless, allow for an assessment of photocopy costs in one respect.   On March 4, 2013, the Court issued an order requiring Diperna to submit a courtesy copy of his motion for summary judgment to chambers.   Doc. No. 44.   The print log reflects a March 4, 2013 charge for 613 pages pertaining to Diperna's motion for summary judgment.   Doc. No. 177, at 66.   Accordingly, I recommend that the Court find that those 613 pages are taxable.[30]

GEICO argues that the requested rate of $0.25 per page is excessive and should be reduced to $0.15 per page.   Doc. No. 184, at 10–11.   "[W]ithin the Middle District, and the Eleventh Circuit generally, there is broad consensus that the reasonable market rate for copies is $.10 to $.15 cents."   *Perkins v. Tolen*, No. 3:10-cv-851-J-37TEM, 2012 U.S. Dist. LEXIS 109990, at *9 (M.D. Fla. July 12, 2012)*, adopted by* 2012 U.S. Dist. LEXIS 109991 (M.D. Fla. Aug. 7, 2012).

As a result, I recommend that $11,898.66 be deducted from the claimed photocopying costs[31] and that Diperna be awarded $91.95 for the 613 pages of taxable printing, at a rate of $0.15 per page.

---

[30] I have also considered whether any costs should be taxed with respect to Diperna's trial exhibits, which consist of 118 pages.   Doc. Nos. 137-1 through 137-13.   While the print log does reflect that some documents with "exhibit" in their title were printed, the log also associates page numbers with many of those documents that differ substantially from the page totals for the exhibits ultimately used at trial.   Accordingly, in the absence of further clarifying information, I recommend that the Court find Diperna has not carried his evidentiary burden to recover for such costs.

[31] The reduction is calculated as follows: $11,990.61 taxed - $91.95 appropriately awarded =

6.     <u>Video Technician Expense.</u>

The Clerk taxed $1,000.00 in "[o]ther costs," for Diperna hiring a technician to assist at trial with a video presentation.   GEICO argues that § 1920 does not authorize the taxing of such costs. Doc. No. 184, at 12.   Diperna concedes that the cost of technical support to assist with a trial is not a taxable cost under § 1920(4).   Doc. No. 187, at 17.   He contends, however, that he should still be awarded such costs because they were necessary to facilitate the presentation of a videotaped deposition at trial.   *Id.*

Diperna cites no authority in support of his position.   Moreover, the Eleventh Circuit has made clear that "nothing in § 1920, the Federal Rules of Civil Procedure, or case law . . . support[s] the taxation of costs for . . . fees charged by a videographer for playback of video depositions at trial."   *See Morrison*, 97 F.3d at 465–66; *cf. Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, No. 10-61532-CIV-COHN, 2011 U.S. Dist. LEXIS 142139, at *12–13 (S.D. Fla. Dec. 9, 2011) (declining to award labor costs associated with a jury view).   Consequently, Diperna should not be awarded the $1,000.00 technician fee.

7.     <u>Total Cost Reduction.</u>

The Court, considering the above, should deduct a total sum of $13,618.72 from the bill of costs (Doc. No. 177)[32], and tax costs in the total amount of $7,386.88[33].

## III.   RECOMMENDATIONS.

In light of the foregoing, I respectfully **RECOMMEND** that the Court do the following:

---

$11,898.66.

[32] Calculated as follows: $17.81 in disallowed fees of the Clerk + $165.00 in disallowed fees for service of summons and subpoenas + $412.25 in disallowed fees for printed or electronically recorded transcripts + $125.00 in disallowed fees for witnesses + $11,898.66 in disallowed fees for exemplification and the costs of making copies + $1,000.00 in disallowed other fees = $13,618.72.

[33] Calculated as follows: $21,005.60 - $13,618.72 = $7,386.88.

1.     **GRANT in part and DENY in part** Plaintiff Daniel J. Diperna's Motion for Award of Attorney's Fees, Paralegal Fees, and Interest on Same (Doc. No. 182);

2.     **ORDER** Defendant Geico General Insurance Company to pay Plaintiff Diperna $255,647.50 in attorneys' fees with prejudgment interest at the Florida statutory rate from the date of the Court's ruling on this Report and Recommendation;

3.     **GRANT in part and DENY in part** Diperna's Renewed Motion for Award of Costs (Doc. No. 187);

4.     **VACATE** the Bill of Costs (Doc. No. 177); and,

5.     **ORDER** Defendant Geico General Insurance Company to pay costs in the total amount of $7,386.88, plus post-judgment interest thereon at the legal rate.[34]

### <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 18, 2016.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[34]  The Court may wish to delay issuance of a second amended judgment until it resolves the issue of appellate fees to be paid.